UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SUPERIOR DIVING CO., INC.                                CIVIL ACTION

VERSUS                                                   NO. 05-197

JAY WATTS                                                SECTION "N" (2)

### ORDER AND REASONS

Before the Court is the Emergency Motion (Complaint) for Preliminary and Permanent Injunction **(Rec. Doc. 288)**, filed by Intervenor and Counter-Defendant Seth Cortigene ("Cortigene") and Third-party Defendant Newton B. Schwartz, Sr. ("Schwartz"). After reviewing the memoranda of the parties and the applicable law, the Court rules as follows.

### I.   BACKGROUND

On January 24, 2007, this Court issued a 60-day Order of dismissal, upon receiving notice from counsel that the case had settled. (Rec. Doc. 110). A motion to reopen the case was filed by Watts on March 23, 2007. (Rec. Doc. 111). On March 26, 2007, a motion to enforce settlement was filed by Superior Diving Co., Inc. ("Superior"). (Rec Doc. 112). This Court denied the motion to reopen case and granted the motion to enforce settlement on August 24, 2007. (Rec. Doc. 133). On September 11, 2007, a motion for new trial/reconsideration/relief from judgment was filed by Watts. (Rec. Doc. 134). Also, Robert Homes, Jr. ("Homes") requested leave to enroll as counsel for Watts. (Rec. Doc. 140). The Court granted this request

1

on September 18, 2007. (Rec. Doc. 141).

On September 20, 2007, this Court allowed Cortigene to withdraw as counsel of record for Watts (Rec. Doc. 147), and on October 1, 2007, the Court allowed Cortigene to file the petition for intervention seeking attorneys fees and costs that may be due as a result of settlement or judgment. (Rec. Doc. 158). On October 12, 2007, Watts answered the intervention and asserted therein a counterclaim against Cortigene and Schwartz (although Schwartz never had properly filed an intervention, and thus, the claim against him could only be a third party demand).

Concerned about whether jurisdiction existed over the counterclaim and third party demand, and anticipating an intent by Watts to pursue the malpractice claim elsewhere and later, the Court ordered that Watts set forth in writing the jurisdictional basis of this Court over the allegations raised in his counterclaim and third party demand by proposed amendment. (Rec. Doc. 257). Watts responded by asserting that the counterclaim against Cortigene was compulsory (i.e., Watts asserted that he was *required* under Rule 13(a) of the Federal Rules of Civil Procedure to file this counterclaim in this action), thereby negating the need for an independent jurisdictional basis. As for the third party demand against Schwartz, Watts argues that it was properly before the Court based on Rule 14 of the Federal Rules of Civil Procedure. (Rec. Doc. 260). On February 13, 2008, in response to Watts' memorandum, the Court issued an Order stating that Watts had set forth sufficient grounds for jurisdiction "at this juncture." (Rec. Doc. 274). The Court qualified that conclusion by acknowledging that "[t]he issue of jurisdiction might be subject to revisiting depending on whether the underlying claim is

ultimately deemed 'settled' by the Court [at the March 25, 2008 evidentiary hearing][1]." (*Id.*).

Finding the issues raised in the intervention and responsive counterclaim and third party demand to be separate and distinct from the underlying matter, and their resolution dependent on settlement/trial of Watts' claim against Superior, the Court, on February 19, 2008, severed them from the main demand, which was allegedly settled in early 2007. Further, the Court stayed discovery and other proceedings in the severed intervention/counterclaim/third party demand "until such time as the Court deems fit to reopen such matters." (Rec. Doc. 276).

At the conclusion of the deposition[2] of Cortigene on March 13, 2008, Homes, Watts' attorney, personally served Cortigene and Schwartz with a Complaint filed on March 10, 2008 in Mississippi state court[3], which alleges the same malpractice allegations against them that are present in the counterclaim and third party demand in this Court. Thereafter, on March 18, 2008, Cortigene and Schwartz filed the instant motion for preliminary and permanent injunction, seeking a permanent injunction against the filing of any other suits elsewhere, including the case currently pending in Mississippi state court. Thus, this Court is presently faced with the issue of parallel proceedings relating to Jay Watts' malpractice claims against Cortigene and Schwartz pending both in this Court and in Mississippi state court.

---

[1] On March 25, 2008, the Court held an evidentiary hearing to determine whether Watts' former attorneys had his authority to settle the underlying lawsuit, and if so, whether that settlement was valid. This determination is presently under advisement with the Court.

[2] This deposition was supposedly limited to the issue of authority to settle the Watts claim against Superior, and the fairness of such settlement.

[3] *Jay Watts v. Newton Schwartz and Seth Cortigene*, Civil Action no. A2401.08.64, Circuit Court of Harrison County, Mississippi, First Judicial District.

3

**II.     ANALYSIS**

In response to the Court's order requesting an explanation as to the jurisdictional basis for Watt's counterclaim and third party demand, Watts responded by asserting that the counterclaim was compulsory. In other words, Watts argued that he was required to file this counterclaim in *this* action. The Court accepted that explanation, however, it stated, "[t]he issue of jurisdiction might be subject to revisiting depending on whether the underlying claim is ultimately deemed 'settled' by the Court." (Rec. Doc. 274).

Thereafter, Watts filed a Complaint in Mississippi state court alleging the same malpractice allegations as alleged in his purportedly "compulsory" counterclaim, which the Court had severed from the issues in the main demand and stayed.[4]

Thus, the filing of this Mississippi state court case has resulted in parallel proceedings pending in different jurisdictions alleging the same claims against the same parties. For this Court to proceed with the counterclaim/third party demand upon the lifting of the stay would result in duplicative work being done on the same claims in two different forums. This hardly seems to be a wise use of judicial time and resources and seems unfair to the parties who are

---

[4] Homes, Watts's attorney, initially indicated to the Court in a March 24, 2008 telephone conference (wherein John Herke, counsel for Superior Diving Company, Inc., also participated) that it was never his intention to immediately pursue the action he filed in Mississippi state court. Homes informed the Court that he filed the action to protect himself in the event that this Court would later revisit the jurisdictional issue related to the counterclaim and third party demand, and subsequently determine that no such jurisdiction exists. He explained that he had indeed intended to discuss staying the Mississippi state court case with Cortigene and Schwartz, but was appalled when Schwartz reacted negatively (by allegedly screaming at Homes and slamming the door in his face) after Homes served them with the Complaint following a seven hour deposition, with no previous indication to them or the Court of his intention to file and serve the new state court suit. In the telephone conference with the Court, Homes indicated that he intended to file a motion to stay the Mississippi state court case, which would have mooted the instant motion. However, contrary to his previous argument that filing such claim in this Court was "compulsory", Homes now has disavowed his initial intention to stay the Mississippi state court case and currently argues that because the federal malpractice action is stayed, the Mississippi state court forum offers his client a more prompt adjudication on the merits of the malpractice claims.

4

faced with paying double the fees and costs associated with litigating the same malpractice claims in two separate forums. Thus, pursuant to the abstention doctrine espoused in *Colorado River Water Conservation District v. United States*, 96 S. Ct. 1236, 424 U.S. 800, 47 L.Ed.2d 483 (1976), and for the specific reasons that follow, this Court concludes that the counterclaim against Cortigene and the third party demand against Schwartz should be dismissed without prejudice.[5]

In *Colorado River*, the United States Supreme Court determined that the district court had not erred in dismissing a federal court case that was filed prior to a state court case, which alleged the same claims. The Supreme Court reasoned:

> In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums. No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required. Only the clearest of justifications will warrant dismissal.

*Id.* at 818 (internal citation omitted).

Here, although Watts asserted these malpractice claims first in federal court and then in

---

[5] This Court recognizes that abstention from the exercise of federal jurisdiction is the exception, rather than the rule. Indeed, it is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. See *Colorado River*, 424 U.S. at 813. The Court further recognizes that, as between state and federal courts, the general rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . ." *Colorado River*, 424 U.S. at 817 (quoting *McClellan v. Carland*, 217 U.S. 268, 30 S.Ct. 501, 54 L.Ed., 762 (1910). This general rule is largely based on the notion that there is a "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. "Given this obligation, and the absence of weightier considerations of constitutional adjudication and state-federal relations, the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." *Id.* at 818.

state court, the claims are admittedly stayed in federal court until the undersigned makes a determination as to the validity of the purported settlement of the main demand. Further, if the undersigned concludes that there was not a valid settlement of the main demand, the malpractice claim will remain stayed until the Court sees the main demand through to final disposition. These claims were stayed by this Court before much work, if any, was done on them. Thus, the state court forum offers a more immediate adjudication of Watts' claims and does not result in duplicative work being done, based on this Court's timely stay of these claims in this action.

Also, as Watts points out, Mississippi seems to be an equally appropriate forum in which to bring these claims because Watts lived in Mississippi in Harrison County. Indeed, Schwartz and Cortigene personally traveled to Mississippi and communicated with Watts while he was in Mississippi, during their representation of him.

While duly considering the heavy obligation for this Court to exercise jurisdiction over claims brought before it, the Court concludes that dismissal of Watt's malpractice claims brought in his counterclaim and third party demand is warranted to ultimately avoid duplicative and piece meal litigation. The malpractice claims in Watts' third party demand and counterclaim are parallel; that is, they involve the same parties and the same issues. See *Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 540 (5th Cir.2002). Moreover, the state proceeding provides an adequate means of resolution for Watts' malpractice claims. Considering the foregoing, this Court concludes that exceptional circumstances exist for it to properly exercise its ability to abstain from exercising jurisdiction over Watts' counterclaim and third party demand.

The Court notes that if Schwartz and Cortigene are not necessarily resolved to litigating these malpractice claims in Mississippi state court based on, for example, the inconvenience of

that forum.[6] They may pursue removal of the Mississippi state court case to federal court in Mississippi, if the claims are indeed removable. Once there, they may choose to seek a transfer of venue to this Court.

### III. CONCLUSION

**IT IS ORDERED** that the stay of the counterclaim and third party demand **(See Rec. Doc. 276)** is **LIFTED. Watts' Counterclaim and Third Party Demand (See Rec. Doc. 275)** are hereby **DISMISSED** without prejudice**.** The stay of the Petition for Intervention (See Rec. Doc. 276) shall remain in place.

**IT IS FURTHER ORDERED** that the Emergency Motion (Complaint) for Preliminary and Permanent Injunction **(Rec. Doc. 288)** is **DENIED as moot.**

New Orleans, Louisiana, this 9th day of April, 2008.

_____
**KURT D. ENGELHARDT**
**United States District Judge**

---

[6] Schwartz and Cortigene also argue that the malpractice action should be stayed or dismissed because it is premature. These arguments, too, can be presented in the state court.

7