UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SUPERIOR DIVING COMPANY, INC. | CIVIL ACTION |
| VERSUS | NO. 05-197 |
| JAY WATTS | SECTION "N" (2) |

## **ORDER AND REASONS**

     Before the Court are the following two motions: (1) the Motion for Summary Judgment (Rec. Doc. 89), filed by Superior Diving Company, Inc. ("Superior"), and (2) Watts' Motion for Leave to File Notice of Filing Statement of Neil Wyeth (Rec. Doc. 303). This motion for summary judgment, which is opposed, was originally set for hearing on January 24, 2007 (Rec. Doc. 109), however, that hearing was cancelled in conjunction with the issuance of a 60-Day Order of Dismissal (Rec. Doc. 110), after the Court received word from counsel that this matter had settled. Thereafter, Jay Watts ("Watts") challenged whether an authorized settlement had actually been confected, and after an evidentiary hearing, the Court recently granted Watts' motion for new trial, reset this matter for trial, and reset the instant motion for hearing. The Court denied Watts' request to reopen discovery and reset deadlines, all of which had already expired when the case purportedly settled. Instead, the Court agreed with Watts, ruling that no settlement had actually been authorized,

1

and reinstated the case from the point in time that the settlement allegedly took place.

Also under consideration is a request by Watts to now introduce a statement from a witness taken months after the case purportedly settled, and later obtained by his current counsel, who enrolled to challenge the settlement approximately eight months after the settlement allegedly occurred.

## I.     BACKGROUND FACTS

On November 12, 2004, Watts, a saturation diver employed by Superior, allegedly sustained a decompression injury while on a work-related dive from aboard the D/V Mansil 18.  After Watts' injury, Superior immediately began paying Watts maintenance and cure benefits.  On January 25, 2005, Superior filed suit against Watts, seeking a declaratory judgment that it was no longer obligated to pay maintenance and cure benefits.  Watts then filed a counterclaim[1] under the Jones Act and general maritime law against Superior. (Rec. Doc. 5).  These claims advanced by Watts in his Counterclaim/Third Party Claim (Rec. Docs. 5, 8) lacked specificity.  In addition to his claims for maintenance and cure, which were dismissed by the January 10, 2007 Order of this Court (Rec. Doc. 109), Watts alleged that his injuries were "proximately caused by the negligence of Superior, its employees (other than Watts) agents, representatives acting in the course and scope of their employment and in furtherance of Superior's activities under Respondeat superior." (Rec. Doc. 8, ¶ 3).  Watts also generally alleged that "[h]is injuries, in commerce were also casually related to the unseaworthiness of the D/V Mansil 18". (Rec. Doc. 8, ¶ 5).  Watts then clarified his Jones Act negligence claim in his discovery responses, wherein he explained that Superior was negligent

---

[1] Watts also filed a Third Party Claim, but does not appear to have named a third party. (Rec. Doc. 8).

because Watts was not kept at a proper "storage depth" following his dive, which resulted in his decompression sickness. (Exhibit A to Rec. Doc. 89). It is Watts' negligence claim under the Jones Act and his unseaworthiness claim under general maritime law that are now placed before the Court by Superior in an attempt to dispose of this entire matter.

## II.   PROCEDURAL HISTORY

The epic procedural history of this matter has been set forth extensively in previous orders (See, for example, Rec. Docs. 301 and 302) and, to avoid unnecessary repetition, will not repeated herein.

## III.   LAW AND ANALYSIS

### A.   Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id*.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265

(1986); see also *Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir.1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2553; see also *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir.2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir.2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir.2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that

4

evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence ." *Little*, 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir.2002).

    B.    Analysis

        1.    Watts' Unseaworthiness Claim

To sustain his burden of proving unseaworthiness, the injured seaman is required to show that the vessel (including its appurtenances, gear and equipment) was not reasonably fit for its intended purpose. *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354 (5th Cir.), cert. denied, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 533 (1988). Watts claims in the Counterclaim/Third Party Claim that "[h]is injuries, in commerce were also casually related to the unseaworthiness of the D/V Mansil 18". (Rec. Doc. 8, ¶ 5). Watts makes no further allegations regarding the vessel's alleged unseaworthiness. He does, however, claim that Superior's crew was somehow negligent in setting a storage depth (for pressure purposes), which allegedly led to his decompression sickness. However, as Superior notes, a vessel is not deemed unseaworthy because of an isolated personal negligent act of the crew. *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 500, 91 S.Ct. 514,518, 27 L.Ed.2d 562 (1971). Indeed, if a vessel could be considered unseaworthy because of the isolated negligence of a crew member, that would destroy the distinction between unseaworthiness and negligence. Thus, because Watts has filed to put forth any evidence to show

that the D/V Mansil 18 was unseaworthy, his claim for unseaworthiness is dismissed.

        2.       Watts' Jones Act Negligence Claim

Under the Jones Act, a seaman's employer is liable for damages if the employer's negligence caused the seaman's injury. See *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir.1997). The seaman is held to the standard of the reasonable seaman in like circumstances. *Id.* at 339. A seaman may prevail in a Jones Act action if he shows that "employer negligence played any part, even the slightest, in producing the injury ... for which damages are sought." *Id.* at 335.

As stated herein, Watts alleged that his injuries were "proximately caused by the negligence of Superior, its employees (other than Watts) agents, representatives acting in the course and scope of their employment and in furtherance of Superior's activities under Respondeat superior." (Rec. Doc. 8, ¶ 3). He further clarified his Jones Act negligence claim in his discovery responses wherein he explained that Superior was negligent because Watts was not kept at a proper "storage depth" following his dive, which resulted in his decompression sickness. (Exhibit A to Rec. Doc. 89). More specifically, Watts claims that he developed decompression sickness after a dive to 237 feet because Superior failed to keep proper pressure in either the on-deck saturation system or in the diving bell (or both).

Superior argues that Watts cannot meet his burden of showing that Superior failed to maintain proper pressure in the saturation system. To support this assertion, Superior points to its dive logs and the sworn declarations of current and former employers, which demonstrate that Superior maintained the saturation system within the range set forth by the U.S. Navy Dive Tables for the dive wherein Watts was allegedly injured. In his opposition, Watts does not dispute these assertions. Thus, taking into account the assertions made by Superior in its Motion for Summary

Judgment, which are supported by appropriate Rule 56 evidence, and Watts' failure to address those assertions in his opposition thereto, the Court determines that there is no evidence to show that Superior negligently failed to maintain proper pressure in the saturation system or in the diving bell on the dive wherein Watts was allegedly injured.

Watts attempts to oppose the Superior's motion and create a genuine issue of material fact by advancing a new argument in his opposition, which was mentioned neither in his Counterclaim/Third Party Claim nor in his discovery responses, wherein he was specifically asked to describe "how the accident at suit occurred" and to list "each act or omission of Superior which allegedly caused or contributed to the accident." (Exhibit A to Rec. Doc. 89).  For the very first time in his opposition, Watts claims that during the course of the dive wherein he was allegedly injured, Superior negligently delivered or "fed" to him an improper mixture of gases, commonly referred to as a "heliox mix." Watts apparently requested from Superior the tables of the heliox delivery to Watts and was told by Superior that "they had no such records." (Rec. Doc. 95-2, p. 2). In his opposition, Watts submits no evidence to support his claim regarding the improper gas mixture. In fact, Watts admittedly has no direct evidence, and Superior has no such records. Instead, he claims that, because Superior "had no such records", he is entitled to a spoliation instruction that the requested documents were in his favor. However, a spoliation instruction entitles the fact-finder to draw an inference that a party who *intentionally* destroys important documents did so because the contents of those documents were unfavorable to that party. See *Vick v. Tex. Employment Comm'n*, 514 F.2d 734, 737 (5th Cir.1975).  Here, there is no allegation, much less any supporting evidence, that Superior intentionally destroyed these records.  There is also no evidence that these records ever existed in any recorded form.  Watts has failed to create or identify a genuine

issue of material fact in dispute as to this "johnny-come-lately" claim regarding an improper gas mixture being fed to Watts during the dive in question.

Watts also attempts to support this improper gas mixture claim and raise another, never-before-asserted claim, that he was improperly directed to go "above the bell" on the dive, by requesting that the Statement of fellow diver Neil Wyeth ("Wyeth") be considered in opposition to Superior's motion. This Statement, however, was obtained by Watts' current counsel, who enrolled approximately eight months after this motion for summary judgment was set to be heard and the case was purportedly settled. All along, the Court has been clear that it would not allow further discovery to be conducted if this case were reopened and reset for trial.[2] The reason for this Court's stance on this issue is simple: allowing a party to terminate counsel and hire new counsel, who then resets already-expired deadlines (including the discovery deadline) in order to get a "do over" or "mulligan" on the eve of a summary judgment hearing would be an invitation for docket chaos. In

---

[2] On January 9, 2008, the Court explained that if it was determined that Watts did not authorize his former counsel, Seth Cortigene ("Cortigene") and Newton Schwartz ("Schwartz"), to settle, then the case would be reopened and would be reinstated from the point in time wherein the alleged settlement purportedly took place (i.e., from the eve of the motion for summary judgment hearing, after all case deadlines, including the discovery deadline, had expired). (See Rec. Doc. 242). The Court further reiterated its position on this issue at the conclusion of the January 23, 2008 hearing. Most recently, on April 10, 2008, the Court explained:

> the deadline for written reports of plaintiff's experts, which was December 1, 2006, and for written reports of defendant's experts, as well as the discovery deadline, which expired on January 1, 2007, will not be reopened; likewise, the list of all witnesses who may or will be called to testify at trial, which should have been filed by both sides before January 1, 2007, will also not be reopened.

(Rec. Doc. 302). Thus, the Court was clear that Watts would not be able to reopen discovery if he prevailed on his motion for new trial. Watts' current counsel obtained the instant Statement from Neil Wyeth on December 14, 2007, which Statement he now requests to use to defeat Superior's Motion for Summary Judgment. To the extent Wyeth could have been deposed timely (his name was well-known to Watts and Watts' counsel and his original affidavit was attached to Superior's Memorandum in Support of its Motion for Summary Judgment filed in early November of 2006), this submission was obtained well outside of the discovery deadline.

8

a world where such procedure would be customary and usual practice, few cases would be concluded as the opportunity would always exist to hire new counsel, reset deadlines, and keep digging for evidence. The Court also notes that while Watts has claimed that his former counsel's representation of him was inadequate, he currently has pending in a Mississippi federal court a malpractice action against his former attorneys. As this Court has explained many times in this case, any arguments regarding their conduct should be made in that case, not in this case, which involves claims arising out of Watts' diving incident. Thus, for all of these reasons and for all the reasons previously stated by the Court in past orders and in past hearings on the record, the Court stands by its decision not to reopen discovery and reset already expired deadlines. This Statement, which was obtained more than eight months after the discovery deadline, will not be considered by the Court in relation to the instant summary judgment motion. Thus, Watts' Motion for Leave to File Notice of Filing Statement of Neil Wyeth (Rec. Doc. 303) is denied.

The Court further finds that, even if this statement were allowed and considered in relation to the instant summary judgment motion, summary judgment in favor of Superior is still warranted. First, to address the additional allegations regarding the improper gas mixture argument made by Watts for the first time in his opposition, Neil Wyeth ("Wyeth") admits, "I am not sure if I am reading the LST's notes correctly[3], but if I am, then the oxygen content being mixed on this dive was very high, much higher than I have seen." (Statement of Neil Wyeth ¶ 8). Wyeth candidly and blatantly admits that he is not sure that he is even reading the notes correctly. His supposition that the gas mixture may have been improper is not "evidence of a contradictory fact." Indeed, Watts' burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical

---

[3] The LST log is a record of the oxygen amounts fed to a diver on a particular dive.

doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence ." *Little*, 37 F.3d at 1075. Thus, Wyeth's Statement fails to create a genuine issue of material fact regarding the improper gas mixture negligence claim.

As indicated above, Wyeth's Statement attempts to raise yet a third negligence claim regarding Watts being instructed to "go above the bell." This claim was not raised in Watts' Counterclaim/Third Party Claim, was not mentioned in Watts' discovery responses[4], was not mentioned in Watts' deposition (at least not in the portions of the transcript that were submitted to the Court), and was not mentioned in his opposition to Superior's summary judgment motion. It seems to have been advanced only by Watts' current counsel after his enrollment in September of 2007, and approximately nine months after the discovery deadline had passed. Thus, despite being presented with numerous opportunities to put this issue before the Court, Watts, a trained and experienced diver, neglected to mention this theory in: (a) his Counterclaim/Third Party Claim; (b) his verified discovery responses; (c) his deposition; and (d) his opposition to Superior's motion for summary judgment. For these reasons, this claim is not now properly before the Court. Admittedly, other than Wyeth's unsupported assertion that Watts went "above the bell" and his speculation that that could have caused or contributed to Watts' decompression sickness (see ¶ 14 of the Wyeth

---

[4] Superior propounded discovery requests to Watts and specifically asked the following:

> Please state, *in your own words and without reference to the pleadings filed on your behalf in this matter*, how the accident at suit occurred, including in your answer a description of the work being performed and each act or omission of Superior which allegedly caused or contributed to the accident.

(Exhibit A to Rec. Doc. 89, emphasis added). Watts' response was verified. (*Id.*) His response mentioned nothing regarding his now-alleged "above the bell" journey. Thus, despite being given the clear opportunity to set forth his claims, he neglected to point out this additional theory of recovery. Indeed, the best person to testify regarding his newest theory, the improper "above the bell" journey, was Watts himself, who would have had first hand knowledge of this event and its real or potential impact on him, an experienced diver.

Statement), there is no evidence whatsoever to support this theory.  Again,  Watts' burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence ." *Little*, 37 F.3d at 1075. Thus, Wyeth's statement fails to create a genuine issue of material fact regarding the most recently advanced "above the bell" negligence claim.

Last, Wyeth's Statement does nothing to support Watts' "improper pressure" negligence claim, which he neglected to address in his opposition.  First, as for the system pressure in the deck chamber, Wyeth admits that "didn't notice what the pressure was in the deck chamber" and he "can't be sure of anything in that regard."  (See ¶ 10 of the Wyeth Statement).  However, Wyeth attempts to create some metaphysical doubt by advancing that he remembers noticing an unusual amount of condensation inside the bell, which he hypothesizes would indicate "a large differential between the Bell pressure and the system pressure, rather than a small one."  He theorizes, "You would have to think that the system pressure inside the Deck Chamber could not have been up around 180 feet, or there would not have been the large amount of condensation that occurred." Again, as this Court has stated elsewhere herein, this speculation and supposition is unsubstantiated and fails to create a genuine issue of material fact regarding the "improper pressure" negligence claim.

### III.  CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 89)**, filed by Superior  is **GRANTED**.  Superior is entitled to summary judgment as a matter of law as to all of Watts' remaining claims in this matter.

**IT IS FURTHER ORDERED** that  **Watts' Motion for Leave to File Notice of Filing Statement of Neil Wyeth (Rec. Doc. 303)** is **DENIED.**

**IT IS FINALLY ORDERED** that, based on the foregoing, the stay of the **Complaint for Intervention/Third Party Demand (Rec. Doc. 159)**, filed by Schwartz and Cortigene for attorneys fees in this matter, is **LIFTED.** This **Complaint for Intervention/Third Party Demand (Rec. Doc. 159)** is hereby **DISMISSED**.

New Orleans, Louisiana, this 25th day of April, 2008.

**KURT D. ENGELHARDT**
**United States District Judge**